```
 1                  UNITED STATES DISTRICT COURT

 2                 EASTERN DISTRICT OF TENNESSEE

 3                        AT CHATTANOOGA

 4    ----------------------------------------------------------

 5    BWS PROPERTIES, LLC,        )
                                  )
 6                    Plaintiff,  ) No. 1:24-cv-00029
                                  )
 7    vs.                         ) Judge Christopher H. Steger
                                  )
 8    AIRGAS USA, LLC,            ) Non-Jury
                                  )
 9                    Defendant.  )

10    ----------------------------------------------------------

11

12

13

14

15

16

17                 DEPOSITION OF DAWN VAN DYKE

18                      April 23, 2025

19

20

21

22

23

24

25
```

Fouraker Reporting Service, Inc. (423)316-6484

```
 1    A        Yes.

 2    Q        And can you describe those for me, please.

 3    A        I -- the square footage, I think, is one thing

 4    we went back and forth on; the term, as far as how long

 5    we were going to renew; and the rent amount.

 6    Q        And, when you say "square footage," can you tell

 7    me what you mean by that.

 8    A        The square footage in the original lease was

 9    twenty-one thousand and something; and then it switched,

10    with the new lease, to forty-some thousand.

11    Q        Were there -- was there anyone else, other than

12    yourself and Ms. Nevans, responsible for negotiating the

13    terms of the lease?

14    A        Well, final approval to do anything was through

15    the CFO.

16    Q        And remind me of the CFO's name.

17    A        Colin Donato.

18    Q        Did anyone else have any input along the way

19    with negotiations?

20    A        No, not that I am -- not that I'm aware of.

21    Q        And that's on Airgas's side, not BWS.  Was there

22    anyone else at Airgas that you spoke with or strategized

23    with?  Again, not talking about outside counsel or

24    anything like that.

25    A        Just my CFO, you know, and the real-estate
```

1    team.

2    Q        And who's on the real-estate team?

3    A        Well, by "real-estate team," I mean myself.  I

4    would talk to Colin.  And then, of course, we would, you

5    know, talk to the president of the division.  He would be

6    aware of what was going on.  The area vice-president

7    would have input as well.

8    Q        Who was the area VP at the time?

9    A        I believe, at the time, it was Clayton Merrick.

10   Q        And, then, who was the president, at the time,

11   of that division?

12   A        John Sheehan.

13   Q        And I hate to ask this, but are you able to

14   spell either of their last names for our lovely court

15   reporter?

16   A        Sure.  John Sheehan, S-H-E-E-H-A-N; and Clayton

17   Merrick is M-E-R-R-I-C-K, I believe.

18   Q        Closer than I can get it, so thank you.

19            Okay.  And you mentioned negotiations about the

20   term of the lease.  Can you tell me about those

21   discussions.

22   A        I believe, initially, it was -- we were talking

23   about a five-year term; but then the rent was going up so

24   much that we asked if we could get a six-month lease to

25   figure out what we were going to do, and then they

1    A        It varies.  I'm not a part of that department,
2    so I'm not completely sure.
3    Q        Similar to having a favorite secretary, I wasn't
4    sure if you had a favorite accounts-payable person that
5    would take care of things for you.
6    A        No.
7    Q        My secretary's my favorite, so I just have to
8    ask.
9             Does Airgas owe any outstanding amounts at
10   present for reimburse of property taxes and insurance for
11   the property under the 2022 to 2023 lease?
12   A        I believe for the five months in 2023.
13   Q        Do you know why that has currently not been
14   paid?
15   A        They never received -- or I haven't received
16   proof of payment.
17   Q        If you received proof of payment today, what
18   would be your next step?
19   A        I would submit it to legal and ask them how to
20   handle it.
21   Q        And, by "proof of payment," what exactly were
22   you -- are you meaning by "proof of payment"?
23   A        A check where it was paid.
24   Q        I'm going to show you what we're going to mark
25   as Exhibit 9.

```
1    counsel?

2    A        David Martineau.

3    Q        M-A-R-T-I-N-E-A-U?

4    A        That's correct.

5    Q        Is that the correct spelling?

6    A        Yes.

7    Q        And, just reading through the first sentence of

8    your email, the one you sent in response, if you wouldn't

9    mind following along, you said: "Portions of your

10   description of the items to which you claim a right to

11   reimbursement were not sufficiently clear for us to make

12   any kind of determination."

13           Was this something that you were instructed to

14   draft, or was this something that you were wanting just

15   additional information on?

16           MR. ROBISON:  And let me maybe ask for some

17   clarification.  Is that a question about instruction

18   from legal counsel?  Because I probably would make the

19   general recommendation to the deponent not to testify

20   about what she told legal counsel or what legal counsel

21   told her.

22           But, outside of that, if you can answer the

23   question, please go ahead.

24   A        I just think things weren't -- weren't clear.

25   Q        Was there some specific information or
```

```
 1                   C E R T I F I C A T E

 2   STATE OF TENNESSEE              COUNTY OF HAMILTON

 3        I, Robin Lee Fouraker, Court Reporter and Notary

 4   Public, the officer before whom the foregoing deposition

 5   was taken, do hereby certify that the witness whose

 6   testimony appears in the foregoing deposition was duly

 7   sworn by me; that the testimony of said witness was taken

 8   by me in machine shorthand and thereafter reduced to

 9   computerized transcript; that said deposition is a true

10   record of testimony given by said witness; that I am

11   neither counsel for, related to nor employed by any of

12   the parties to the action in which this deposition was

13   taken and further that I am not a relative or employee of

14   any attorney or counsel employed by that parties hereto

15   nor financially or otherwise interested in the outcome of

16   the action; that said deposition has in no manner been

17   changed or altered since same was given by said witness

18   but that the same has remained in my possession up to the

19   time of delivery.

20        IN WITNESS WHEREOF, I have hereunto set my hand

21   this 9th day of May 2025.

22                         _____

23                         Robin Lee Fouraker, LCR, RDR, CRR

24                         Tennessee LCR Number:  021

25   My commission expires:  October 27, 2026.
```