# INDUSTRIAL BUILDING LEASE
(700 Manufacturer's Road, Chattanooga, Tennessee 37405)

**THIS INDUSTRIAL BUILDING LEASE** ("**Lease**") made as of the Effective Date by and between **BWS PROPERTIES, LLC,** a Tennessee limited liability company (the "**Landlord**") and **AIRGAS USA, LLC**, a Delaware limited liability company (the "**Tenant**").

## WITNESSETH:

**THAT FOR AND IN CONSIDERATION** of the mutual covenants and agreements herein contained, the parties hereto do hereby covenant and agree as follows:

1. **BASIC TERMS.** This **Section 1** contains the Basic Terms of this Lease between Landlord and Tenant. Other Sections of this Lease may further explain the Basic Terms and are to be read in conjunction with the Basic Terms. Unless separately defined elsewhere in this Lease, the Basic Terms shall have throughout this Lease the meanings set forth below.

   1.1. **Effective Date.** June 1, 2022.

   1.2. **Land.** That certain tract or parcel of real property more particularly described on **Exhibit A-1** hereto attached and herein incorporated.

   1.3. **Premises.** The Land together with all improvements thereon located, including but not limited to the Building, and together with all easements, rights and appurtenances thereto. The Premises also includes a 60,500 sf parking lot and an 18,000 sf loading lot.

   1.4. **Building.** The buildings located on the Land are as follows:

   | **BUILDING** | **SQUARE FEET** |
   |---|---|
   | Main | 2,600 sf Office<br>3,300 sf Retail<br>6,100 sf Warehouse |
   | 2 | 2,300 sf Repair |
   | 3 | 1,500 sf Repair |
   | 4 | 5,320 sf Gas House |
   | | 18,000 sf Loading Lot |

   having a street address of 700 Manufacturer's Road, Chattanooga, Tennessee 37405 (collectively the "**Building**").

   1.5. **Lease Term.** Twelve (12) months, commencing on the Effective Date or as otherwise provided for in **Section 2.2** herein ("**Commencement Date**") and

expiring on the last day of the twelfth (12th) month after the Commencement Date ("**Expiration Date**"), subject to any extensions of the Term herein provided ("**Term**").

1.6. **Rent Commencement Date**. The date that Rent first commences which shall be the Commencement Date.

1.7. **Permitted Uses**. Warehousing, distribution, repair, sales, storage and office relating to the filling and distribution of industrial gases and welding supplies and equipment. (See **Section 6.1**).

1.8. **Brokers**. (See **Section 21**)

(a) Tenant's Broker: N/A
(b) Landlord's Broker: N/A

1.9. **Rent**.

(a) Base Rent. Base Rent payable by Tenant is: One Hundred Eighty-Five Thousand Seven Hundred Thirty and 00/100ths Dollars ($185,730.00) annually or Fifteen Thousand Four Hundred Seventy-Seven and 50/100ths Dollars ($15,477.50) per month.

(b) Adjustments to Base Rent. On the anniversary of the Commencement Date and annually thereafter ("**Adjustment Date**"), the then current Base Rent payable by Tenant under this Lease shall increase by the percentage change in the Consumer Price Index ("**CPI**"). The adjustment shall be made by multiplying the then current Base Rent by a fraction, the numerator of which is the latest available published CPI prior to the Adjustment Date and the denominator of which is the published CPI for the month that is twelve (12) months prior to the published CPI that is used for the numerator ("**Rental Increase**").

For purposes of this Lease, the CPI shall be the Consumer Price Index of the Bureau of Labor Statistics of the United States Department of Labor for All Urban Consumers, South (1982-84=100), "All Items". If the compilation or publication of the CPI is transferred to any other governmental department or bureau or agency or shall be discontinued, then the index most nearly the same as the CPI shall be used to calculate the annual increases under this Lease.

1.10. **Renewal**. The Term of this Lease shall automatically renew on the same terms and conditions for successive terms of one (1) year (each an "**Extension Term**"); provided, however, the Base Rent for each Extension Term shall increase by the percentage change in the CPI. Notwithstanding anything herein to the contrary, Tenant may elect to not renew the Lease upon giving Landlord no less than ninety (90) days' notice of such election.

**1.11. Exhibits to Lease.** The following exhibits are attached to and made a part of this Lease.

1. **Exhibit A-1:** Legal Description of Land

**1.12. Operating Year.** The period commencing on the Commencement Date and ending on December 31st of that year, and each subsequent calendar year until the expiration or termination of the Term.

## 2. LEASE OF PREMISES; DELIVERY OF POSSESSION.

**2.1. Lease of Premises for Lease Term.** Landlord hereby grants a leasehold estate in and leases the Premises solely and exclusively to Tenant, and Tenant hereby leases the Premises from Landlord for the Term and subject to the terms and conditions of this Lease.

## 3. RENT AND OTHER CHARGES PAYABLE TO LANDLORD.

**3.1. Types of Rental Payments.** Tenant shall (a) pay Base Rent on the first (1st) day of each and every calendar month during the Term of this Lease, and (b) reimburse Landlord for Taxes (herein defined) and any other amounts herein identified as Additional Rent (**"Additional Rent"**) (Base Rent and Additional Rent shall collectively be referred to as **"Rent"**).

**3.2. Covenants Concerning Rental Payments.** Tenant shall pay Rent promptly when due, beginning on the Rent Commencement Date, without notice or demand and without any abatement, deduction, or setoff, except as may otherwise be expressly and specifically provided in this Lease. Tenant shall pay Rent at the location identified herein for notices to Landlord, or at or to such other place as Landlord shall give notice of to Tenant in writing, except for those amounts of Additional Rent which Tenant shall pay directly to third parties as herein described. If the Rent Commencement Date and/or Expiration Date or date of prior termination of this Lease occurs on a day other than the first day of a calendar month, the Rent due for such partial months shall be prorated on a per diem basis. In the event any payment of Rent is past due and all notice and cure periods have expired, Tenant shall pay a late fee of $500.00 and all outstanding Rent shall accrue interest at the highest rate allowed by law.

**3.3. Taxes.**

**3.3.1. Landlord's Obligation to Pay Taxes.** Landlord shall promptly pay all real estate taxes, assessments, and charges due and payable relating to the Premises (**"Taxes"**) throughout the Term, subject to the respective rights to challenge Taxes as herein provided. "Taxes" shall be defined as real estate taxes, assessments, sewer rents, rates and charges, transit taxes, taxes based upon receipt of rent, and any other federal, state or local government charge, general, special, ordinary or extraordinary, which are levied or assessed or become a lien against the Premises or any portion thereof, and are payable in any calendar year during the Term and any tax in substitution of any of the foregoing. With respect to real estate taxes, "Taxes" shall be defined as those real estate taxes that are assessed against the Premises, or any portion thereof, for the calendar year to which they are applicable without regards to when they are due and payable. Notwithstanding anything herein to the contrary, Taxes shall not include any franchise, capital, stock, transfer, inheritance or income tax, late payment charges, interest and penalties imposed on Landlord. Taxes shall also include any personal property taxes (attributable to the year in which paid) imposed upon the furniture, fixtures, machinery, equipment, apparatus, systems and appurtenances of Landlord at the Premises to the extent used in connection with the operation of the Premises. In no event shall Tenant be responsible or be required to pay or contribute to the payment of any Taxes applicable to the period prior to the Commencement Date or after the Termination Date.

3

**3.3.2. Tenant's Obligation to Reimburse for Taxes.** During each Operating Year of the Term, Tenant shall reimburse to Landlord as Additional Rent, upon receipt from Landlord of marked "paid" bills for Taxes or other proof of payment, and within fifteen (15) days of receipt of same, the amount of such Taxes actually paid in that Operating Year. Tenant's liability for reimbursement shall be prorated if the Term expires or terminates prior to the end of the period for which such Taxes are assessed. In the event that the Premises incur any Taxes during the Term, whether special assessments or otherwise, which are payable in installments, calculation of Tenant's liability for such Taxes shall be limited to those Taxes due and payable during the course of the Term. During the Term, Landlord shall, upon receipt of any tax bills for any Taxes due and payable during the Term, promptly deliver a copy of said bills to Tenant. In the event Tenant elects to challenge any Taxes assessed as provided below, Tenant's liability for reimbursement to Landlord for Taxes shall abate until Taxes are required to be paid by the assessing authority. In the event Tenant does not reimburse Landlord within such fifteen (15) day period set forth herein, Tenant shall pay a late fee of Five Hundred and No/100 Dollars ($500.00) and any outstanding reimbursement shall accrue interest at the highest rate allowed by law.

**3.3.3. Notification of Increase; Right to Challenge.** Landlord shall provide written notice to Tenant of any increase in Taxes or in assessed value on which Taxes are based within thirty (30) days of the date Landlord becomes aware of same. Landlord or Tenant may elect, upon reasonable grounds, to contest the amount or validity of any Taxes assessed, and the other party shall cooperate in good faith with the efforts to this end, provided that the party initiating the challenge shall pay all out-of-pocket expenses of the non-initiating party.

4. **UTILITIES AND ADDITIONAL SERVICES.**

    4.1. **Utilities.** Tenant shall contract for utility service to the Premises in its own name and shall be solely responsible for paying for such utility service.

    4.2. **Cessation of Services.** If any essential services (such as HVAC, electricity, or water) supplied by Landlord are interrupted, Landlord agrees both to commence the maintenance, repairs, replacements or restoration with reasonable promptness and to diligently pursue same and in such manner as not to unreasonably interfere with Tenant's use and occupancy of the Premises. No such interruption of systems, utilities, or services shall be deemed an eviction or disturbance of Tenant's use and possession of the Premises, or any part thereof, or relieve Tenant from performance of Tenant's obligations under this Lease, including, but not limited to, the obligation to pay Rent, provided, however, if an interruption hereunder continues for more than five (5) business days, Tenant's obligations hereunder shall cease until the interruption has been successfully restored or rectified.

5. **USE OF PREMISES; COMPLIANCE WITH LAWS.**

    5.1. **Use of Premises.** Tenant may use the Premises for any purpose(s) set forth in **Section 1.7** above, subject only to those existing restrictions, if any, disclosed to Tenant in writing prior to the Effective Date of this Lease. Tenant may use and shall have access to the Premises twenty-four (24) hours a day, seven days a week. Tenant shall not at any time use or occupy the Premises, or do anything in or on the Premises that (a) violates any Certificate of Occupancy for the Premises; (b) causes material waste to all or any portion of the Premises or any equipment, facilities or systems therein; or (c) constitutes a violation of any Laws (herein defined) applicable to Tenant's use of the Premises.

    5.2. **Compliance with Laws.** Tenant shall, at its expense, ensure that the Premises at all times comply with all local, state and federal laws (including but not limited to the Americans with Disabilities Act), rules, regulations and requirements now or hereafter in force and all judicial and administrative decisions pertaining thereto (collectively, **"Laws"**), relating to the Premises. If any license

4

or permit is required for Tenant to conduct its business in the Premises, Tenant, at its expense, shall procure such license or permit prior to the Commencement Date and shall maintain such license or permit in good standing throughout the Term.

    **5.3. Hazardous Materials.** If during the Term any Hazardous Material (defined below) is generated, transported, stored, used, treated, released, or disposed of at, to, from, on or in the Premises by or as a result of any act or omission of Tenant, then Tenant shall, at its expense, at all times comply with all Environmental Laws (defined below), and Tenant shall further, at its expense, obtain and maintain in full force and effect at all times all permits and other approvals required in connection therewith. Tenant covenants to investigate, clean up and otherwise remediate to the extent required by any Environmental Law, at Tenant's expense, any release of Hazardous Materials caused or created during the Term by Tenant and/or any or all of Tenant's officers, directors, agents, or employees. Such investigation and remediation shall be performed only after Tenant has obtained Landlord's prior written consent; provided, however, that Tenant shall be entitled to respond immediately to an emergency without first obtaining such consent. Tenant shall not enter into any settlement agreement, consent decree or other compromise with respect to any claims relating to any Hazardous Materials in any way connected to the Premises without first obtaining Landlord's written consent (which consent Landlord shall not unreasonably withhold, condition, or delay) and affording Landlord the reasonable opportunity to participate in any such proceedings. As used herein, the term **"Environmental Laws"** shall mean any and all applicable laws, regulations, and judicial opinions (federal, state, and local) pertaining to Hazardous Materials or that otherwise deal with, or relate to, air or water quality, air emissions, soil or ground conditions or other environmental matters of any kind; and **"Hazardous Materials"** shall mean any waste, material or substance (whether in the form of liquids, solids or gases, and regardless of whether air-borne) that is or may be deemed to be or include a pesticide, petroleum, asbestos, polychlorinated biphenyl, radioactive material, urea formaldehyde or any other pollutant or contaminant that is or may be deemed to be hazardous, toxic, ignitable, reactive, corrosive, dangerous, harmful or injurious, or that presents a risk to public health or to the environment, and that is or becomes regulated by any Environmental Law.

**6. REPAIRS AND MAINTENANCE.**

    **6.1. Tenant Repairs and Maintenance.** Tenant shall, at its expense throughout the Term, (a) preserve in good working order (subject to normal and customary wear and tear and damage by casualty) and maintain and perform all repairs and maintenance to the Premises and the fixtures and appurtenances therein, including, but not limited to, the Premises' Mechanical Systems and the striping, paving and replacement of the driveways and parking lot serving the Premises; (b) maintain all doors and windows, including replacement of glass, of the Building; (c) keep the Premises in a clean, safe and sanitary condition, including but not limited to providing its own janitorial service and garbage collection and including keeping the Premises free from any garbage and refuse; and (d) be responsible for keeping the grounds of the Premises reasonably mowed, trimmed, and free from overgrowth of vegetation. Notwithstanding the foregoing, Landlord shall be responsible for the expense of any repairs to the Premises (or to any item of personal property owned by Tenant and located on the Premises) if the need for such repairs results from Landlord's negligence.

    **6.2. Landlord Repairs and Maintenance.** Landlord shall, at its expense throughout the Term, maintain, repair, replace and restore the foundation, flooring (but excluding floor covering), exterior and interior load-bearing walls, and roof and roof structure of the Building and all other structural elements of the Building, including but not limited to the Premises' HVAC Systems. Landlord agrees to commence the maintenance, repairs, replacements or restoration described in this Section with reasonable promptness after receiving from Tenant written notice of the need for same and to diligently pursue same and in such manner as not to unreasonably interfere with Tenant's use and occupancy of the Premises. Notwithstanding the foregoing, Tenant shall be responsible for the expense of any repairs to the Premises

5

20438299v4

Case 1:24-cv-00029-CHS    Document 29-4    Filed 07/22/25    Page 5 of 16    PageID #: 387

BWS-000047

(or to any items of personal property owned by Landlord and located on the Premises) if the need for such repairs results from Tenant's negligence; provided, however, that Tenant shall not be responsible for the expense of any repairs, claims for which Landlord has waived pursuant to **Section 9.3** hereof.

## 7. ALTERATIONS; SIGNAGE.

### 7.1. Procedural Requirements.
Tenant may, from time to time, at its expense, make alterations or improvements in and to the Premises (hereinafter collectively referred to as **"Alterations"**) without acquiring the prior written consent of Landlord in each instance, provided that: (a) the Alterations cost less than $5,000.00, are non-structural and the structural integrity of the Building shall not be affected; (b) the Alterations are to the interior of the Building or involve the installation of communications equipment to the exterior of the Building; (c) the proper functioning of the Mechanical Systems is not impaired. For any other Alterations, Tenant shall be required to obtain the prior written consent of Landlord, which consent Landlord shall not unreasonably withhold, condition, or delay. If Tenant makes written request for any Alterations requiring Landlord's prior written consent, such request must be accompanied by a description of the proposed Alterations. If Landlord fails to deny consent to the proposed Alterations in writing accompanied by reasons for such denial within thirty (30) days of Tenant's request, then Landlord shall be deemed to have granted consent to the Alterations described. After obtaining Landlord's consent for any Alterations (either expressly or by inference), Tenant shall give Landlord at least five (5) days' prior written notice of the commencement of any Alterations at the Premises, and Landlord may elect to record and post notices of non-responsibility at the Premises.

### 7.2. Performance of Alterations.
Tenant shall cause all Alterations to be performed in compliance with all applicable permits, Laws, building codes, and requirements of public authorities. Tenant shall cause all Alterations to be diligently performed in a good and workmanlike manner, using materials and equipment at least equal in quality and class to the materials and equipment existing on the Premises at the time the Alterations are commenced. Tenant shall obtain all necessary permits and certificates necessary for constructing any Alterations and shall provide Landlord with copies of all "as built" plans, construction contracts, governmental permits and certificates, and proof of payment for all labor and materials, including, without limitation, copies of paid invoices and final lien waivers.

### 7.3. Lien Prohibition.
Tenant shall pay when due all claims for labor and material furnished to the Premises in connection with any Alterations. Tenant, at its expense, shall procure the satisfaction or discharge of record of any material liens and encumbrances filed in connection with any Alterations within thirty (30) days after the filing thereof or, in the alternative, Tenant may procure (for Landlord's benefit) a bond or other protection against any such lien or encumbrance.

### 7.4. Signage.
Tenant may affix any sign of any size or character to any portion of the Premises, with prior written consent of Landlord; provided, however that Landlord may require Tenant to remove any such signage for good cause and Tenant shall promptly heed such request and further provided that Tenant shall remove all signs of Tenant's upon the expiration or earlier termination of this Lease. Upon Tenant's removal of signage, Tenant shall repair any damage to the Premises caused by, or resulting from, such removal.

## 8. LANDLORD'S AND TENANT'S PROPERTY.

### 8.1. Landlord's Property.
Upon the expiration or prior termination of this Lease, any Alterations to the Premises, other than business and trade fixtures, machinery and equipment, communication equipment and office equipment which Tenant may remove in accordance with this Lease,

6

20438299v4

Case 1:24-cv-00029-CHS    Document 29-4    Filed 07/22/25    Page 6 of 16    PageID #: 388

BWS-000048

shall remain and be deemed part of the Premises and the property of Landlord ("**Landlord's Property**"), without compensation or credit to Tenant. Further, any personal property in the Premises on the Commencement Date, movable or otherwise, unless installed and paid for by Tenant, shall be and shall remain the property of Landlord and Tenant shall not be required to remove the same from the Premises. Notwithstanding anything herein to the contrary, Tenant, at Tenant's election and so long as Tenant is not in default hereunder, may remove Tenant's Property from the Premises without the prior written consent of Landlord.

**8.2. Tenant's Property.** All moveable, non-structural partitions, business and trade fixtures, machinery and equipment, communications equipment and office equipment that are installed in the Premises by, or for the account of, Tenant and without expense to Landlord and that can be removed without structural damage to the Building, and all furniture, furnishings and other articles of movable personal property owned by Tenant and located in the Premises (collectively, the "**Tenant's Property**") shall be and shall remain the property of Tenant and may be removed by Tenant at any time during the Term, provided Tenant repairs or pays the cost of repairing any damage to the Premises resulting from the installation and/or removal thereof and provided Tenant is not in default hereunder. On or before the Expiration Date, or the date of any earlier termination, Tenant, at its expense, shall remove from the Premises all of Tenant's Property, and Tenant shall repair any damage to the Premises resulting from any installation and/or removal of Tenant's Property. Any other items of Tenant's Property that shall remain in the Premises after the Expiration Date, or following an earlier termination date, may, at the option of Landlord, be deemed to have been abandoned, and in such case, such items may be retained by Landlord as its property or after notice to Tenant be disposed of by Landlord, in Landlord's sole and absolute discretion.

**9. INSURANCE.**

**9.1. Insurance to be Maintained by Landlord; Reimbursement by Tenant.** Landlord shall maintain, at its expense, throughout the Term (a) "all-risk" property insurance covering the Building and all other improvements on the Land and any items of personal property owned by Landlord and located on the Premises (at full replacement cost) against loss or damage upon casualty(including structural, fire, boiler and machinery, liability, earthquake, terrorism, and code upgrade coverage) and providing coverage for rent abatement in such event and (b) commercial general public liability insurance covering Landlord for claims arising out of liability for bodily injury, death, personal injury, and property damage occurring in and about the Premises and otherwise resulting from any acts and operations of Landlord, its agents and employees, with limits of Two Million and No/100 Dollars ($2,000,000.00) per occurrence and Two Million and No/100 Dollars ($2,000,000.00) in the aggregate (the "**Landlord's Policies**"). Tenant shall pay to Landlord on a monthly basis along with Rent, an amount equal one-twelfth of the estimated cost of Landlord's Policies. At the end of each Lease Year, Landlord shall notify Tenant of any underpayment or overpayment and Tenant shall promptly pay any underpayment to Landlord or be credited for any overpayment towards the next month's estimated reimbursement amount for Landlord's Policies. In the event any reimbursement for Landlord's Policies is past due, Tenant shall pay a late fee of Five Hundred and No/100 Dollars ($500.00) and all outstanding reimbursements for Landlord's Policies shall accrue interest at the highest rate allowed by law.

Tenant's liability for reimbursement shall be prorated if the Term expires or terminates prior to the end of the coverage period associated with such insurance premium. The insurance policies to be maintained by Landlord herein shall (a) be issued by insurance companies authorized to do business in the state in which the Land is located with an A.M. Best's rating of A-VII or better; (b) in the case of commercial general public liability insurance, name the Tenant as an additional insured. Landlord shall provide Tenant with certificates of such insurance prior to the Commencement Date.

7

20438299v4

Case 1:24-cv-00029-CHS    Document 29-4    Filed 07/22/25    Page 7 of 16    PageID #: 389

BWS-000049

**9.2. Insurance to be Maintained by Tenant.** Tenant shall maintain, at its expense, throughout the Term (a) "all-risk" property insurance covering Tenant's Property against loss or damage and (b) commercial general public liability insurance covering Tenant for claims arising out of liability for bodily injury, death, personal injury, and property damage occurring in and about the Premises and otherwise resulting from any acts and operations of Tenant, its agents and employees, in the amounts of $2,000,000.00 per occurrence and $2,000,000.00 annual general aggregate. The insurance policies to be maintained by Tenant herein shall (a) be issued by insurance companies authorized to do business in the state in which the Land is located; and (b) in the case of commercial general public liability insurance, name the Landlord as an additional insured. Tenant shall provide Landlord with certificates of such insurance within thirty (30) days of the Rent Commencement Date.

**9.3. Waiver of Subrogation.** Landlord and Tenant each waive any right to recover against the other for damage to or loss of property, real or personal, to the extent that the type of damage or loss, but without regard to the monetary amount of such damage or loss, is actually insured against or is required to be insured against (whichever is greater) by Landlord or Tenant under this Lease. This provision is intended to waive, fully and for the benefit of each party, any rights and/or claims which might give rise to a right of subrogation by any insurance carrier. The coverage obtained by each party pursuant to this Lease shall include, without limitation, a waiver of subrogation by the carrier which conforms to the provisions of this Section. The waiver contained in this Section is mutual, and in the event that either party maintains insurance coverage that, at the time of a loss that would be covered by this waiver of subrogation, does not contain a waiver of subrogation by the carrier in accordance with this Section, then the waiver contained in this Section shall be void and of no further effect as to the other party.

**10. INDEMNIFICATION.**

**10.1. Tenant Indemnification.** Except for such claims as are waived in **Section 9.3**, Tenant hereby indemnifies, defends, and holds harmless Landlord and its respective affiliates, owners, partners, directors, officers, agents, and employees (**"Landlord Indemnified Parties"**) from and against any and all Losses (defined below) to the extent of (a) any omission or negligence of any or all of Tenant or Tenant Indemnified Parties; and (b) claims for work or labor performed or materials supplies furnished to or at the request of any or all of Tenant or Tenant Indemnified Parties. The term **"Losses"** shall mean all claims, demands, expenses, actions, judgments, damages (whether direct or indirect, known or unknown, foreseen or unforeseen), penalties, fines, liabilities, suits, administrative proceedings, costs and fees, including, without limitation, attorneys' and consultants' fees and expenses, and the costs of cleanup, remediation, removal and restoration, that are in any way related to any matter covered by the foregoing indemnity. The provisions of this Section shall survive the expiration or termination of this Lease.

**10.2. Notice of Claim.** Landlord agrees to promptly notify the Tenant of any claim, demand, or cause of action instituted or threatened to be instituted against Landlord to the extent same relates to the Premises and may trigger indemnification obligations as set forth above.

**11. FORCE MAJEURE.** Except as otherwise herein provided, the obligations of Landlord and Tenant hereunder shall not be affected, impaired, or excused, and Landlord and Tenant shall have no liability whatsoever to each other, with respect to any act, event or circumstance arising out of a failure to fulfill, or delay in fulfilling, any obligations under this Lease, other than the payment of money, by reason of labor dispute, governmental preemption of property in connection with a public emergency or shortages of fuel, supplies, or labor, or any other cause, to the extent same is beyond the reasonable control of the defaulting party; provided, however, in no event shall such delay be excused beyond sixty (60) days of the date of such labor dispute, public emergency, or other cause occurs.

12. **DAMAGE OR DESTRUCTION**.

    12.1. **Notification and Repair.** Tenant shall give notice to Landlord of any fire or other casualty causing material damage to the Premises or any portion thereof. Subject to the provisions of **Section 12.3** below, if the Premises are damaged by fire or other casualty, Landlord shall promptly and diligently (but in any event within 180 days) repair the damage and restore and rebuild the Premises with reasonable dispatch to substantially the same condition as immediately prior to such casualty after notice to it of the damage or destruction. Landlord shall use its diligent, good faith efforts to make such repair or restoration promptly and in such manner as not to unreasonably interfere with Tenant's use and occupancy of the Premises.

    12.2. **Rental Abatement.** If (a) the Premises are damaged by fire or other casualty thereby causing the Building to be inaccessible or (b) the Building is damaged by fire or other casualty, then Rent shall proportionally abate to the extent of any actual loss of use of the Premises by Tenant until such time as the Premises are fully and completely restored to substantially the same condition as immediately prior to such casualty.

    12.3. **Lease Termination Upon Substantial Destruction.** If the Premises are substantially destroyed by fire or other casualty such that (in the reasonable opinion of a reputable contractor or architect designated by Landlord): (a) its repair or restoration requires more than two hundred seventy (270) days, or (b) such repair or restoration requires the expenditure of more than 75% of the full insurable value of the Premises immediately prior to the casualty, or (c) the damage occurs during the last twelve (12) months of Term, Landlord and Tenant shall each have the option to terminate this Lease (by so advising the other, in writing) within ten (10) days after said contractor or architect delivers written notice of its opinion to Landlord and Tenant. In such event, the termination shall be effective as of the date of the casualty. If neither Landlord nor Tenant timely delivers a termination notice, this Lease shall remain in full force and effect and Landlord shall use its diligent, good faith efforts to make such repair or restoration promptly and in such manner as not to unreasonably interfere with Tenant's use and occupancy of the Premises. For purposes of this Section only, **"full insurable value"** shall mean replacement cost, less the cost of footings, foundations and other structures below grade, but including any required code upgrades.

13. **EMINENT DOMAIN.** If all or any portion of the Premises is taken or condemned for any public use under any Law or by right of eminent domain, and Tenant reasonably determines that such taking materially impairs Tenant's use of or access to the Premises, then Tenant may terminate this Lease upon written notice to Landlord and such termination shall be deemed effective when the physical taking of said Premises occurs. If a portion of the Premises is so taken or condemned to an extent such that Tenant determines that its use of and access to the Premises is not materially impaired, then this Lease shall not terminate, but the Rent payable hereunder shall proportionally abate to the extent of any material loss of use of the Premises by Tenant. Landlord shall be entitled to any and all payment, income, rent or award, or any interest therein whatsoever, which may be paid or made in connection with such a taking or conveyance, and Tenant shall have no claim against Landlord for the value of any unexpired portion of this Lease. Notwithstanding the foregoing, any compensation specifically awarded for Tenant's moving expenses, Tenant's loss of business or goodwill, the value of property installed by Tenant, or for Tenant's Property, shall be the property of Tenant.

14. **SUBORDINATION AND ESTOPPEL CERTIFICATES; EXISTING LENDER.**

    14.1. **Subordination.** Provided that Tenant is provided with a reasonable and customary nondisturbance and attornment agreement duly executed by the holder of any mortgage, deed to secure debt, or deed of trust or by the Landlord pursuant to any ground lease, this Lease shall be subject and subordinate at all times to (a) all ground leases or underlying leases that may now exist or hereafter be

9

executed affecting the Premises and (b) any mortgage, deed to secure debt, or deed of trust that may now exist or hereafter be placed upon, and encumber, any or all of the Premises, any ground leases or underlying leases for the benefit of the Premises, or all or any portion of Landlord's interest or estate in any of said items. Subject to the foregoing, Tenant shall execute and deliver, upon demand by Landlord and in the form reasonably requested by Landlord, any additional documents evidencing the subordination of this Lease with respect to any such ground leases or underlying leases for the benefit of the Premises or any such mortgage, deed to secure debt, or deed of trust.

**14.2. Estoppel Certificates.** Tenant agrees, from time to time and within fifteen (15) business days after request by Landlord, to deliver to Landlord, or Landlord's designee, an estoppel certificate stating such matters pertaining to this Lease as may be reasonably requested by Landlord. Landlord and Tenant intend that any statement delivered pursuant to this section may be relied upon by any prospective purchaser or mortgagee of the Property or of any interest therein or any other Landlord designee.

**15. ASSIGNMENT, SUBLETTING AND MORTGAGING.** Except for that certain sublease of one repair building to Gas Apparatus Remanufacturing, Tenant may not assign or otherwise transfer this Lease or sublet the Premises or any part thereof, without the prior consent of Landlord.

**16. LANDLORD'S ACCESS TO PREMISES.** Landlord shall have the right to enter and/or pass through the Premises at any time or times upon not less than twenty-four (24) hours prior notice to Tenant, which may be telephonic, during normal business hours, (except in the event of emergency): (a) to examine and inspect the Premises and to show them to actual and prospective lenders and prospective purchasers of the Premises; and (b) to make such repairs, alterations, additions and improvements in or to all or any portion of the Premises, or the Mechanical Systems, facilities, and equipment, as Landlord is required to make hereunder. Landlord shall be allowed to take all materials into and upon the Premises that may be required in connection with any repairs, alterations, additions or improvements, without any reduction or modification of Tenant's covenants and obligations hereunder; provided, however, that Landlord shall use reasonable efforts to minimize interference with Tenant's business operations and Tenant's occupancy and use of the Premises. During the period of six (6) months prior to the Expiration Date, Landlord and its agents may exhibit the Premises to prospective tenants. Additionally, Landlord shall have the following rights with respect to the Premises, exercisable without notice to Tenant, and without being deemed an eviction or disturbance of Tenant's use or possession of the Premises or giving rise to any claim for setoff or abatement of Rent: (a) to have pass keys, access cards, or both, to the Premises, provided that (i) Landlord supply Tenant with a sufficient number of same to allow Tenant's intended use and enjoyment of the Premises; and (ii) Tenant may secure certain areas of the Premises without allowing Landlord access and (b) to decorate, remodel, repair, alter or otherwise prepare the Premises for reoccupancy at any time after Tenant abandons the Premises for more than thirty (30) consecutive days and ceases paying Rent.

**17. QUIET ENJOYMENT.** Subject to the provisions of this Lease, so long as Tenant pays the Rent in a timely manner and performs its other obligations hereunder, Tenant shall not be disturbed in its possession, use, and occupancy of the Premises. This covenant shall be construed as a covenant running with the Land and is not a personal covenant of Landlord, and the owner of the Premises shall be obligated to ensure the enforcement of same.

**18. EVENTS OF DEFAULT.**

**18.1. Landlord Breach Provisions.** Landlord shall be deemed in breach of this Lease if (a) Landlord fails to pay Taxes when due, fails to maintain the insurance policies required hereunder, or fails to pay any other sum which Landlord is hereunder obligated to pay, or (b) Landlord fails, whether by

10

20438299v4

Case 1:24-cv-00029-CHS    Document 29-4    Filed 07/22/25    Page 10 of 16    PageID #: 392

BWS-000052

action or inaction, to timely comply with or satisfy any or all of the obligations imposed on Landlord under this Lease for a period of thirty (30) days (unless otherwise herein specified) after Tenant's delivery to Landlord of written notice of such default; provided, however, that if the default cannot, by its nature, be cured within such thirty (30) day period, but Landlord commences and diligently pursues a cure of such default promptly within the initial thirty (30) day cure period, then Tenant shall not exercise its remedies under **Section 19.3**.

    **18.2.** **Tenant Breach Provisions.** Tenant shall be deemed in breach of this Lease if (a) Tenant fails to pay Rent or any other payment due hereunder within five (5) business days after receipt of written notice from Landlord of such failure to pay; (b) Tenant fails, whether by action or inaction, to timely comply with or satisfy any or all of the obligations imposed on Tenant under this Lease (other than the obligation to pay Rent or other amounts due hereunder) for a period of thirty (30) days after Landlord's delivery to Tenant of written notice of such default; provided, however, that if the default cannot, by its nature, be cured within such thirty (30) day period, but Tenant commences and diligently pursues a cure of such default promptly within the initial thirty (30) day cure period, then Tenant shall not be in default under this Lease; or (c) Tenant makes an assignment for the benefit of creditors, or files a voluntary petition under any state or federal bankruptcy or insolvency law, or an involuntary petition alleging an act of bankruptcy or insolvency is filed against Tenant under any state or federal bankruptcy or insolvency law that is not dismissed within 90 days, or whenever a petition is filed by or against (to the extent not dismissed within 90 days) Tenant under the reorganization provisions of the United States Bankruptcy Code or under the provisions of any law or like import, or whenever a petition shall be filed by Tenant under the arrangement provisions of the United States Bankruptcy Code or similar law, or whenever a receiver of Tenant, or of, or for, the property of Tenant shall be appointed, or Tenant admits it is insolvent or is not able to pay its debts as they mature.

## 19. RIGHTS AND REMEDIES.

    **19.1.** **Cure Remedies Upon Breach.** If Tenant is in breach of this Lease, Landlord may (but shall not be obligated to) cure such breach at the expense of Tenant, upon compliance with any notice requirements and cure periods set forth in **Section 18**, and such expense incurred shall be deemed Additional Rent.

    **19.2.** **Landlord's Remedies Upon Tenant Breach.** In the event Tenant is in breach of this Lease (and in addition to any other remedies provided elsewhere in this Lease), Landlord, at its option and after any applicable notice and cure periods have expired, but without additional notice or demand from Landlord, may, in addition to all other rights and remedies provided in this Lease or otherwise at law or in equity: (a) terminate this Lease and Tenant's right of possession of the Premises; or (b) terminate Tenant's right of possession of the Premises without terminating this Lease. Landlord shall be entitled to recover from Tenant such sums as have accrued under this Lease and remain outstanding and unpaid along with such other amounts and damages as may be available at law or in equity; provided, however, that Landlord shall use its reasonable and good faith efforts, whether Landlord elects to proceed under Subsections (a) or (b) above, to relet the Premises, or any part thereof for the account of Tenant, upon such terms and conditions as are reasonably acceptable to Landlord. In the event Landlord elects, pursuant to clause (b) of this Section, to terminate Tenant's right of possession only without terminating this Lease, Landlord may, at Landlord's option, enter the Premises, remove Tenant's Property, Tenant's signs and other evidences of tenancy, and take and hold possession thereof. In addition to the remedies set forth above, Landlord may require Tenant to pay Landlord's Rental Damages. "Landlord's Rental Damages" shall mean the total Rent which Landlord would have received under this Lease (had Tenant made all such lease payments as required) for the remainder of the Term minus the fair rental value of the Premises for the same period as determined by Landlord, or, if the Premises are relet, the actual rental value (not to exceed the Rent due during the Term), both discounted to present value at the Prime Rate (defined below) in effect upon the

11

20438299v4

Case 1:24-cv-00029-CHS    Document 29-4    Filed 07/22/25    Page 11 of 16    PageID #: 393

BWS-000053

date of determination. For purposes hereof, the "Prime Rate" shall be the per annum interest rate publically announced by a federally issued bank selected by Landlord in the state in which the Premises is located as such bank's prime or base rate. Notwithstanding anything to the contrary set forth herein, in no event shall Tenant be responsible for indirect, consequential or punitive dates.

**19.3. Tenant's Remedies Upon Landlord Breach.** In the event Landlord is in breach of this Lease, (and in addition to any other remedies provided elsewhere in this Lease) Tenant shall be entitled to exercise and pursue all rights and remedies available at law or in equity.

**20.    SURRENDER AND HOLDOVER.** On the last day of the Term, upon any earlier termination of this Lease, or upon Landlord's re-entry of the Premises after a breach of this Lease by Tenant, (a) Tenant shall quit and surrender the Premises to Landlord in as good of a condition as received by Tenant on the Commencement Date, except for ordinary wear and tear and damage by fire or casualty, and (b) Tenant shall remove all of Tenant's Property therefrom, except as otherwise expressly provided in this Lease. The obligations imposed under the preceding sentence shall survive the termination or expiration of this Lease. If any repairs are required to be performed in, to or at the Premises by Tenant (pursuant to the preceding sentence or any other applicable provision of this Lease) upon the expiration or termination of the Term, Tenant shall cause such repairs to be performed, to Landlord's reasonable satisfaction, prior to the date on which this Lease is terminated or expired. If Tenant remains in possession after the Expiration Date hereof or after any earlier termination date of this Lease or of Tenant's right to possession, Tenant shall be deemed a month-to-month tenant, subject to all other terms and provisions of this Lease except for Rent which shall be 150% of the amount then in effect, and either party may terminate such tenancy upon thirty (30) days' prior written notice to the other.

**21.    BROKER.** Each party covenants, warrants and represents that the brokers set forth in **Section 1.8,** if any, were the only brokers to represent the respective parties in the negotiation of this Lease. Landlord shall be solely responsible for paying the commission of Landlord's Broker and Tenant's Broker pursuant to the terms of a separate agreement between Landlord and Landlord's Broker, and a separate agreement between Landlord's Broker and Tenant's Broker, which are both herein incorporated. Each party agrees to and hereby does defend, indemnify and hold the other harmless against and from any brokerage commissions or finder's fees or claims therefor by a party claiming to have dealt with the indemnifying party and all costs, expenses and liabilities in connection therewith, including, without limitation, reasonable attorneys' fees and expenses, for any breach of the foregoing. The foregoing indemnification shall survive the termination of this Lease for any reason.

**22.    [INTENTIONALLY OMITTED].**

**23.    MISCELLANEOUS.**

**23.1.    Merger; Amendment.** All prior understandings and agreements between the parties are merged in this Lease, which alone fully and completely expresses the agreement of the parties. This Lease may not be amended or modified, in whole or in part, except by a writing signed by both parties.

**23.2.    Notices.** Any notice required to be given in writing by either party pursuant to this Lease shall be deemed to have been properly given only if (a) personally delivered, (b) sent by the United States Postal Service, certified mail, postage prepaid, or (c) sent by FedEx or other comparable commercial overnight delivery service, and, in the case of any of the foregoing, addressed to the other party at the addresses set forth below or to such other address as Landlord or Tenant may designate to each other from time to time by written notice. Notices shall be deemed to have been given on the day sent or deposited; provided, however, that any time period for a response or responsive action to such notice shall be measured

12

from the date such notice is actually received (any notice actually received after 5:00 PM at the site of receipt shall be deemed received on the following business day).

If to Landlord:  BWS Properties, LLC
Post Office Box 272
Dayton, TN 37321
Attn: Jenny Nevans
Ph: 423-413-3834

With a copy to:  Miller & Martin PLLC
832 Georgia Avenue, Suite 1200
Chattanooga, TN 37402
Attn: Evan A. Allison
Ph: 423-785-8377

If to Tenant:  Airgas USA, LLC
2015 Vaughn Road
400 Barrett Business Center
Kennesaw, GA 30144
Attn: ~~Leigh A. Purdy~~ Dawn VanDyke
Ph: 678-903-7762

With a copy to:  Airgas USA, LLC
2015 Vaughn Road
400 Barrett Business Center
Kennesaw, GA 30144
Attn: Brett Cohen
Ph: 770-590-6027

**23.3. Non-Waiver.** The failure of either party to insist, in any one or more instances, upon the strict performance of any one or more of the obligations of this Lease or to exercise any election herein contained shall not be construed as a waiver or relinquishment for the future of the performance of such one or more obligations of this Lease or of the right to exercise such election, but this Lease shall continue and remain in full force and effect with respect to any subsequent breach, act or omission. Neither the receipt and acceptance by Landlord, nor the payment by Tenant, of Base Rent or Additional Rent with knowledge of a default in any obligation under this Lease to be performed by the other party shall be deemed a waiver of such breach.

**23.4. Attorneys' Fees.** Any party in breach of this Lease (the "**Breaching Party**") shall reimburse the other party (the "**Nonbreaching Party**") upon demand for any legal fees and court (or other administrative proceeding) costs and related expenses that the Nonbreaching Party incurs in connection with the breach, regardless of whether suit is commenced or judgment entered. Such costs shall include legal fees and costs incurred for the negotiation of a settlement, enforcement of rights or otherwise. Furthermore, in the event of litigation, the court in such action shall award to the party most substantially obtaining the relief sought a reasonable sum as attorneys' fees and costs, which sum shall be paid by the losing party.

**23.5. Parties Bound.** Except as otherwise expressly provided for in this Lease, this Lease shall be binding upon and inure to the benefit of the successors and assignees of the parties hereto. No obligation of Landlord or Tenant shall arise under this Lease until the instrument is signed by, and delivered to, both Landlord and Tenant. In the event Landlord grants, transfers or conveys fee simple title

13

20438299v4

BWS-000055

to the Premises to another party, whether related or not, Landlord agrees to provide Tenant with written notice thereof and a copy of the transfer deed evidencing the same within thirty (30) days of the conveyance.

**23.6.** **Survival of Obligations.** Upon the expiration or other termination of this Lease, neither party shall have any further obligation or liability to the other except as otherwise expressly provided in this Lease and except for such obligations as, by their nature or under the circumstances, can only be, or by the provisions of this Lease, may be performed after such expiration or other termination.

**23.7.** **Governing Law; Severability; Construction; Counterparts.** This Lease shall be governed by and construed in accordance with the laws of the state in which the Land is located. Each provision of this Lease shall be severable from all other provisions, and if any provision of this Lease shall be invalid or unenforceable, the remainder of this Lease shall not be affected but shall be enforced to the extent permitted by law. The captions, headings and titles in this Lease are solely for convenience of reference and shall not affect its interpretation. Both Landlord and Tenant have had the opportunity to be represented by legal counsel in negotiating this Lease, and this Lease shall be construed without regard to any presumption or other rule requiring construction against the party causing this Lease to be drafted. All terms and words used in this Lease, regardless of the number or gender in which they are used, shall be deemed to include any other number and any other gender as the context may require. This Lease may be executed in counterpart and, when all counterpart documents are executed, the counterparts shall constitute a single binding instrument.

**23.8.** **Time.** Time is of the essence of this Lease. If the time for performance hereunder falls on a Saturday, Sunday or a day that is recognized as a holiday in the state, county, city, or town in which the Land is located, then such time shall be deemed extended to the next day that is not a Saturday, Sunday or holiday.

**23.9.** **WAIVER OF TRIAL BY JURY.** LANDLORD AND TENANT, TO THE FULLEST EXTENT THAT THEY MAY LAWFULLY DO SO, HEREBY WAIVE TRIAL BY JURY IN ANY ACTION OR PROCEEDING BROUGHT BY ANY PARTY TO THIS LEASE WITH RESPECT TO THIS LEASE, THE PREMISES, OR ANY OTHER MATTER RELATED TO THIS LEASE OR THE PREMISES.

**23.10.** **Consent.** Wherever this Lease requires the consent or approval of either Landlord or Tenant, such consent may not be unreasonably withheld, conditioned, or delayed unless otherwise expressly stated.

**23.11.** **Prior Lease.** This Lease supersedes and complete replaces that certain Lease between Landlord and Tenant dated November 1, 2013 and amended pursuant to that certain First Amendment to Landlord dated November 19, 2018.

**[SIGNATURES ON FOLLOWING PAGE]**

**IN WITNESS WHEREOF**, Landlord and Tenant have duly executed this Lease as of the day and year first above written.

**LANDLORD:**

**BWS PROPERTIES, LLC**

By: _Margaret Brooks_ (signature)

Print Name: MARGARET BROOKS

Title: CEO


**TENANT:**

**AIRGAS USA, LLC**

By: _(signature)_

Print Name: Colin T. Donato

Title: CFO - South Division

15

20438299v4
20438299v5

BWS-000057

## EXHIBIT A-1
## Legal Description of Land

All that tract or parcel of land lying and being in the City of Chattanooga, Hamilton County, Tennessee and being more particularly described as follows:

Beginning at a point at the intersection of the southern right-of-way of Manufacturer's Road with the eastern right-of-way of Paper Hill Road; thence north 62 degrees 40 minutes east along said southern right-of-way 201.4 feet to a point; thence continuing northeasterly along said right-of-way following the curvature thereof an arc distance of 199.56 feet to a point (said curve has a chord of north 54 degrees 55 minutes east 198.95 feet), thence north 63 degrees 23 minutes east along said right-of-way 141.71 feet to a point; thence south along the curve of the center line of the railroad easement granted to Chattanooga Traction Company recorded in Book 1322, Page 268, Register's Office, Hamilton County, Tennessee, 315.18 feet to a point (said curve has a chord of south 28 degrees 33 minutes east 303.57 feet); thence southwesterly along the northern boundary of the property now or formerly owned by Concrete Service Company the following south 70 degrees 58 minutes west 42.8 feet to a point thence south 61 degrees 16 minutes west 100.09 feet to a point; thence 68 degrees 27 minutes west 58.8 feet to a point; thence south 63 degrees 24 minutes west 59.45 feet to a point; thence south 51 degrees 12 minutes west 70.54 feet to a point; thence south 12 degrees 44 minutes west 85.08 feet to a point; thence south 05 degrees 11 minutes west 110.15 feet to a point; thence south 27 degrees 57 minutes west, 132.04 feet to a point on said eastern right-of-way of Paper Mill Road; thence north 34 degrees 58 minutes west along said right-of-way 252.28 feet to a point; thence north 19 degrees 00 minutes west along said right-of-way 268.1 feet to the Point of Beginning, being the same property conveyed by deeds recorded in Book 1180, Page 609, Book 2338, Page 701 and Book 2841, Page 255, Register's Office, Hamilton County, Tennessee.