UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| BWS Properties, LLC, | ) | |
| | ) | |
| *Plaintiff*, | ) | No. 1:24-cv-00029 |
| | ) | |
| v. | ) | Judge Christopher H. Steger |
| | ) | |
| Airgas USA, LLC, | ) | Non-Jury |
| | ) | |
| *Defendant*. | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE TESTIMONY OF PLAINTIFF'S EXPERT WITNESS**

Plaintiff BWS Properties, LLC ("Plaintiff" or "BWS") submits this response in opposition to Defendant's Motion to Exclude Testimony of Plaintiff's Expert Witness ("Motion") (Doc. 27).

**I.    BACKGROUND**

This case arose as a result of Airgas's failure to properly maintain and surrender certain property owned by BWS, located at 700 Manufacturers Road, Chattanooga, Tennessee (the "Property"), pursuant to an Industrial Building Lease (the "Lease") executed by the parties.

In accordance with the Court's Scheduling Order (Doc. 22), on May 13, 2025, BWS disclosed its expert witness, Nicholas Cornelison, along with his curriculum vitae and expert report.[1] Mr. Cornelison is more than qualified to serve as BWS's expert witness. He has more than 25 years of experience in the construction field, specifically commercial construction. He completed both the Supervisory Training and Project Management Programs through Associated General Contractors of America and is the youngest person in the nation to do so.[2] He is a member

---

[1] *See* **Ex. A**, Plaintiff's Expert Disclosure.
[2] *See* **Ex. B**, Deposition of Nicholas Cornelison ("Cornelison Dep."), 9:21-10:25.

of the Associated General Contractors of East Tennessee, Associated General Contractors of America, and American Institute of Architects.

As evidenced by Mr. Cornelison's report and the testimony during his deposition on July 3, 2025, BWS retained Mr. Cornelison solely for the purpose of opining as to (i) whether costs identified by T.U. Parks Construction are accurate, fair, and reasonable; and (ii) whether the Property was preserved, maintained, or repaired in good working order.[3] BWS did not, however, retain Mr. Cornelison to opine about "the reasons why any of the scopes of work might be necessary," "when any particular repairs became necessary," "whether the scopes of work were caused by any particular party," or "whether they were caused by any alleged breach of the Lease."[4] As this is the entire basis of Airgas's Motion, the same should be denied.

II.   **LAW & ARGUMENT**

   A.   **Standard of Review.**

"Rule 702[] controls the admissibility of all types of expert testimony." *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 176 (6th Cir. 2009). "[A] district court's task in assessing evidence proffered under Rule 702 is to determine whether the evidence 'both rests on a reliable foundation and is relevant to the task at hand.'" *Id*. (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993)). "If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." *Id*. (quoting Fed. R. Evid. 702). "The test of reliability is 'flexible[,]'" *In re Scrap*

---

[3] *See* **Ex. A**, Plaintiff's Expert Disclosure.
[4] *See* Defendant Airgas USA, LLC's Memorandum of Law in Support of Its Motion to Exclude Testimony of Plaintiff BWS Properties, LLC's Expert Witness Nicholas Cornelison ("Plaintiff's Motion"), Doc. 28, p. 3.

*Metal Antitrust Litig.*, 527 F.3d 517, 527 (6th Cir. 2008) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999)), and the Court has "considerable leeway" in determining whether expert testimony is reliable. *Kumho*, 526 U.S. at 152; *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 672 (6th Cir. 2010) ("[W]here one person sees speculation, we acknowledge, another may see knowledge, which is why the district court enjoys broad discretion over where to draw the line[.]"). "The relevance requirement ensures that there is a 'fit' between the testimony and the issue to be resolved by the trial." *See U.S. v. Bonds*, 12 F.3d 540, 555 (6th Cir. 1993).

"The *Daubert* standard is liberal, and it does not require expert opinions to be bulletproof." *U.S. v. Lang*, 717 F. App'x 523, 534 (6th Cir. 2017) (citing *Daubert*, 509 U.S. at 596). The Court's role is "that of gatekeeper [, not] that of armed guard." *Ruiz-Troche v. Pepsi Cola of Puerto Rico Bottling Co.*, 161 F.3d 77, 86 (1st Cir. 1998). For this reason, courts in the Sixth Circuit use "a scalpel, not a butcher knife" when deciding exclusionary motions. *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 593 (6th Cir. 2009) (citations omitted). And "any doubts regarding the admissibility of an expert's testimony should be resolved in favor of admissibility." *In re E. I. Du Pont De Nemours & Co. C-8 Pers. Injury Litig.*, 337 F. Supp. 3d 728, 739 (S.D. Ohio 2015) (citations omitted).

    **B.**    **Mr. Cornelison possesses appropriate knowledge of the expenses paid by BWS.**

As an initial matter, Mr. Cornelison visited the Property, reviewed various documents produced in this matter, and memorialized his findings in a report, as required by the Scheduling Order (Doc. 22) and Fed. R. Civ. P. 26. He was not, however, required to recall every detail of the Property from memory, nor would it be reasonable to expect him to do so immediately, during a deposition that occurred months later, and without the benefit of reviewing notes, documents, photographs, or other relevant materials.

Despite the foregoing, Airgas contends that Mr. Cornelison "lacks a basis for knowledge

3
Case 1:24-cv-00029-CHS    Document 35    Filed 08/08/25    Page 3 of 9    PageID #: 470

of the expenses paid by BWS" because, during his deposition, he could not immediately recall (i) which of the garage doors at the Property was repaired by Access Garage Doors; (ii) which part of the Property's fence was repaired by A. Barnes Fence or when it was damaged; and (iii) which specific HVAC system was repaired at the Property.[5]

Airgas further argues that Mr. Cornelison's testimony as to BWS's expenses should be excluded because he could not testify regarding what necessitated the repair work, the timing of the repairs, when the damage occurred, or why the repairs should be Airgas's responsibility.[6] However, BWS did not ask Mr. Cornelison to provide an opinion on these topics.[7] Mr. Cornelison even confirmed in his deposition that he did not intend to offer an opinion as to who caused the damage to the Property, when such damage occurred, or who is legally responsible to pay for the repairs.[8]

It would ultimately be improper for Mr. Cornelison to testify to these topics because he is not a fact witness and testimony as to causation and timing are factual disputes. BWS has retained Mr. Cornelison as an expert witness, not a fact witness.[9] Additionally, questions of who is legally responsible for paying for said repairs are mixed question of fact and law, which would be equally improper for Mr. Cornelison to address.

---

[5] *See* Plaintiff's Motion, Doc. 28, pp. 8-9.
[6] *Id*. at pp. 9-10.
[7] Notably, Mr. Cornelison merely testified that he could not remember, not that he did not know. *See, e.g.*, **Ex. B**, Cornelison Dep., 44:8-45:25, 46:7-16, 48:18-19. Throughout the deposition, he also stated that he would be able to better recall certain aspects of the Property if opposing counsel would show him documents, which counsel declined to do either entirely or until later in the deposition. *See, e.g.*, **Ex. B.**, Cornelison Dep., 83:10-14, 87:15-17, 92:20-23, 110:18-20, 113:3-6.
[8] *See* **Ex. B**, Cornelison Dep., 276:5-15.
[9] *See* Fed. R. Evid. 701 ("If a witness is not testifying as an expert, testimony in the form of an opinion is **limited to one that is** . . . rationally based on **the witness's perception** . . . [and] **not based on** scientific, technical, or **other specialized knowledge within the scope of Rule 702**.") (emphasis added).

BWS's sole purpose in retaining Mr. Cornelison was to offer expert testimony as to the reasonableness of the T.U. Parks Construction quote and the condition of the Property, pursuant to his experience and training in and knowledge of commercial construction.[10] After walking through the Property and reviewing relevant documents, including photographs and the invoices identified by Airgas in its Motion, that is precisely what Mr. Cornelison offered. And, as a result, Mr. Cornelison determined that certain expenses were incurred by BWS that were not yet included in the repair cost.[11] Mr. Cornelison then included these amounts in his report and confirmed that the repair costs, regardless of causation or responsibility, were reasonably priced.

Mr. Cornelison should not be excluded as an expert on the topics he *has* been retained to address on the grounds that he could not provide testimony on other topics for which he was *not* retained and on which he will not offer an opinion. As such, Mr. Cornelison's opinions and testimony regarding the invoiced amounts should not be excluded.

### C. Mr. Cornelison's testimony regarding T.U. Parks Construction's scope of work is appropriately supported.

Airgas mischaracterizes Mr. Cornelison's testimony regarding the support for his opinion as to the reasonableness of T.U. Parks Construction's pricing. Mr. Cornelison walked through the Property, reviewed photographs and other documents produced in this matter, and discussed certain items in the quote with a T.U. Parks Construction representative.[12] Then, based upon more than twenty-five years of experience in commercial construction, holding nearly every role common to the industry,[13] and creating thousands of bids and quotes, he was more than capable of rendering and did render an opinion as to whether the pricing in the quote was reasonable.

---

[10] *See* **Ex. A**, Plaintiff's Expert Disclosure.
[11] *See* **Ex. B**, Cornelison Dep., 42:19-43:5.
[12] *Id.* at 56:20-25.
[13] *Id.* at 12:4-13:24.

Airgas specifically takes issue with Mr. Cornelison's inability to recall, at a moment's notice, every single document he reviewed when preparing his report. Mr. Cornelison testified, however, that he works on hundreds of projects,[14] and the documents listed in his report – which were produced to Airgas during discovery[15] – are the ones he reviewed.[16] Mr. Cornelison further testified that he reviews bids from the same entities used by T.U. Parks Construction "all day, every day" thus he "[could not] recall for this specific case [whether he reviewed their quotes]" but he "th[ought] he did . . ."[17] He further testified that he sees them daily and actually "bid three projects yesterday and [] had those same people bidding to [him]."[18] Later in the deposition, Mr. Cornelison again testified that he "[could not] recall each individual estimate. The[] two [T.U. Parks Construction quote] pages w[ere] used, but if [he had] seen every sub-bid or whatever, [he] couldn't tell you that [he had] or [had not]" because he "see[s] them – the same sub-bids every day . . . ."[19] It was, therefore, difficult for Mr. Cornelison to recall everything he had reviewed to prepare his report due to the frequency with which he reviews the same on P&C Construction's behalf, months after he submitted his report. For this reason, *inter alia*, he maintained a list of the documents he reviewed as he reviewed them, and this list was included in his expert report.

Because Mr. Cornelison's opinions are supported by experience, training, and the measures taken to prepare the report, including reviewing photographs, documents, and the Property, his testimony has sufficient bases and should not be excluded.

---

[14] *Id.* at 87:9-13.
[15] By reviewing the T.U. Parks Construction documents produced during discovery, Airgas could have easily determined what was reviewed.
[16] *See* **Ex. A**, Plaintiff's Expert Disclosure (including in the list of documents "[v]arious documents produced by T.U. Parks in support of the Budget Breakdown."); **Ex. B**, Cornelison Dep. 77:23-78:7 (confirming documents listed in report were reviewed).
[17] *See* **Ex. B**, Cornelison Dep., 99:19-23.
[18] *Id.* 99:23-24, 100:4-6; *see also id.* at 159:19-160:7.
[19] *Id.* 147:11-21.

### D. Mr. Cornelison based his opinions regarding increased construction costs on easily identifiable and reliable information.

Airgas contends that Mr. Cornelison's opinion about increased construction costs since June 2023 is based upon unidentified and unreliable information. This is simply not true. In actuality, Mr. Cornelison (i) identified the location of the information supporting his opinion as to increased construction costs;[20] (ii) indicated that he believed there was a specific author whose name he could not recall at that time;[21] (iii) confirmed that there are specific reports or articles and the one he referenced was for the United States;[22] and (iv) confirmed that the costs he reviewed were specifically for commercial construction.[23] Airgas also failed to note that Mr. Cornelison testified that the website is regularly used and relied upon by "construction professionals" to "check market prices, check current goings-on in the construction industry" and "all kinds of things related to construction."[24]

As such, Mr. Cornelison's testimony regarding increased construction costs should not be excluded.

### E. Mr. Cornelison's opinions as to additional scopes of work are supported.

Airgas contends that Mr. Cornelison's opinions as to the additional scopes of work excluded from the initial T.U. Parks Construction quote are unsupported because he "do[es] not identify when any particular repairs became necessary, whether the scopes of work were caused by any particular party, or whether they are caused by any alleged breach of the Lease . . ."[25] Once again, Mr. Cornelison was not retained to opine about the necessity of any repairs to be performed,

---

[20] *See* **Ex. A**, Plaintiff's Expert Report.
[21] *See* **Ex. B**, Cornelison Dep., 151:1-7.
[22] *Id.* at 150:14-25, 151:12-15.
[23] *Id.* at 155:5-7.
[24] *Id.* at 149:25-150:13.
[25] *See* Plaintiff's Motion, Doc. 28, p. 13.

when damage was caused, who caused said damage, or whether Airgas breached the Lease. Rather, Mr. Cornelison was retained to offer, and has offered, his expert opinion as to the reasonableness of the T.U. Parks Construction pricing.[26]

## CONCLUSION

In light of the foregoing, Mr. Cornelison's testimony should not be excluded. BWS retained him as an expert witness to opine as to reasonableness of pricing (as Airgas acknowledges) and condition of the Property. The testimony on this topic is well supported by Mr. Cornelison's experience, knowledge, and training, along with his review of the Property and relevant documents produced in this matter. In seeking to exclude Mr. Cornelison's testimony, Airgas was required to demonstrate that he is unqualified, that his testimony is unreliable and irrelevant to the present matter, and/or the testimony will not assist the trier of fact.[27] Airgas failed to meet its burden. Instead, it merely critiqued the *content* of his testimony, which is more appropriately addressed on cross-examination. BWS therefore respectfully requests that the Court deny Airgas's Motion.

Respectfully submitted,

**MILLER & MARTIN PLLC**

By: /s/ *Jessica M. Wolinsky*
    Lynzi J. Archibald, BPR # 30063
    Jessica M. Wolinsky, BPR # 039785
    832 Georgia Avenue, Suite 1200
    Chattanooga, TN 37402
    Telephone: (423) 756-6600
    Facsimile: (423) 785-8480
    lynzi.archibald@millermartin.com
    jessica.wolinsky@millermartin.com

***Counsel for Plaintiff, BWS Properties, LLC***

---

[26] *See* Section II.B, *supra*.
[27] *See* Section II.A, *supra*.

## CERTIFICATE OF SERVICE

    The undersigned hereby certify that an exact copy of this pleading has been served upon counsel for all parties in this action, or upon said parties themselves as required by law, by delivering a copy thereof, via email and/or by depositing a copy of the same in the United States Mail, with sufficient postage affixed thereto, to ensure delivery to the following:

>Mary Beth White, BPR #24462
>Peter C. Robison, BPR #027498
>424 Church Street, Ste. 2500
>Nashville, Tennessee 37219
>(615) 259-1366
>mbwhite@lewisthomason.com
>probison@lewisthomason.com

This 8th day of August 2025.

**MILLER & MARTIN PLLC**

By: /s/ *Jessica M. Wolinsky*