IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| BWS PROPERTIES, LLC, ) | |
| ) | Case No. 1:24-CV-29-KAC-CHS |
| Plaintiff, ) | |
| v. ) | JUDGE KATHERINE A. CRYTZER |
| ) | |
| AIRGAS USA, LLC, ) | MAGISTRATE JUDGE |
| ) | CHRISTOPHER H. STEGER |
| Defendant. ) | |

## DEFENDANT AIRGAS USA, LLC'S REPLY TO PLAINTIFF BWS PROPERTIES, LLC'S RESPONSE TO MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant Airgas USA, LLC ("Defendant" or "Airgas") hereby files this Reply to the Response of Plaintiff BWS Properties, LLC ("Plaintiff" or "BWS") to Airgas' Motion for Partial Summary Judgment. In its Response, BWS has withdrawn its claim for holdover tenancy, and conceded that the "the final lease period – 2022 to 2023 – is the relevant period for assessing damages." Response p. 2, Docket Entry No. 37. In this Reply, Airgas will not address the holdover tenancy claim further, but will address the consequences of BWS' admission as to the relevant period and address other arguments made by BWS in its Response.

### 1. BWS did not provide the required proof of payment of property taxes until after this lawsuit was filed.

With respect to property taxes, BWS argues that it sent Airgas an invoice for prorated property taxes on May 31, 2023. However, BWS has not disputed the fact that it did not provide Airgas with proof of payment of those property taxes on that date, as required the "Industrial Building Lease" (the "Lease") between the parties. See Exhibit D to the Motion for Summary Judgment, Docket Entry No. 29-4. Indeed, because the 2023 property taxes were not yet due, BWS could not have sent the required invoice in May 2023. Exhibit A to the Motion for Summary

Judgment, Excerpts from the Deposition of Jennifer Nevans ("Nevans Depo.") p. 85:1-9, Docket Entry No. 29-1. BWS next argues that it paid the property taxes in November 2023, and "<u>thereafter</u> provided an updated invoice and supporting documentation to Airgas." *Id*. (emphasis added). In both its Response and the attached Affidavit of Jennifer Nevans, BWS uses the word "thereafter" to hide the date on which it finally provided Airgas with proof of payment of the property taxes. Response p. 2; Affidavit of Jennifer Nevans ¶ 6, Document Entry No. 37-1. In fact, BWS filed this lawsuit before sending the documentation of payment of the property taxes to Airgas, and then demanded late fees for a reimbursement that was not previously documented. As Jennifer Nevans admitted in her deposition, she sent the second invoice to Airgas seeking payment for real estate taxes on or about January 3, 2024, after BWS had already filed suit. Nevans Depo. pp. 88:14-90:12.

As the Lease states, the duty of Airgas to reimburse BWS for property taxes is not triggered until "receipt from Landlord of marked 'paid' bills for Taxes or other proof of payment[.]" Exhibit D to Airgas's Motion for Summary Judgment, Industrial Building Lease §§ 3.3.2, Docket Entry No. 29-4. Airgas would also note that the Lease requires BWS to "promptly deliver a copy of said bills to Tenant." *Id*. Airgas would submit that filing a lawsuit before providing a copy of a tax bill marked "paid" does not comply with the prompt delivery requirement in the Lease, and that BWS' claim for property taxes fails as a matter of law.

2. **BWS' admission that the Lease period of June 1, 2022 to May 31, 2023 is the effective period precludes the vast majority of its claims regarding damages to the Property.**

In its Response to the Motion for Partial Summary Judgment, BWS argues that the expert testimony of Mr. Nicholas "Nic" Cornelison is sufficient to establish its claimed damages for repairs to the Property. Airgas incorporates by reference its Reply to the Response of BWS to

Airgas' Motion to Exclude Testimony of Mr. Cornelison, and would point out that in its Response, BWS has conceded that the Lease period is the relevant period for the purposes of these claims. That is, the period from the Commencement Date of June 1, 2022 to May 31, 2023 is the relevant period. Any damages that occurred prior to the Commencement Date are not part of BWS' claims, any damages during the Lease period that are "normal wear and tear" are excluded by the Lease, and damages or repairs occurring after the expiration of the Lease period are likewise excluded.

Unfortunately for Plaintiff, Mr. Cornelison was not provided information about the condition of the Property on the Commencement Date, and he did not review the deposition testimony from the witnesses who had first-hand knowledge of the Property, such as James Corley Johnson, Tracy Harvey, or Peter Van Slyke. Exhibit 1 to Airgas' Motion to Exclude Testimony of Nicholas Cornelison, p. 1, Docket Entry No. 27-1. He cannot recall ever seeing the Property until April 2025, and didn't even take any pictures or measurements of the Property during his only visit. He simply lacks any basis for knowledge about the Lease period, which BWS and Airgas both agree is the applicable period.

BWS also argues in its response that "even if Mr. Cornelison's testimony were limited or barred as Airgas has requested, this does not mean (and Airgas has not asserted) that BWS's repair damages cannot be proven by other evidence." Response p. 7, Docket Entry No. 7. This is mistaken on both accounts.

First, Airgas has indeed asserted that BWS cannot prove its claimed damages by other means, because Airgas has admitted that neither BWS nor Ms. Nevans have information to establish the condition of the Property as of the Commencement Date. As Airgas previously stated in its Memorandum in Support of its Motion for Partial Summary Judgment, "BWS did not do a walkthrough prior to the Commencement Date of the Lease or document the condition of the

Property as of the Commencement Date." Nevans Depo." [Docket Entry No. 29-1] pp. 129:17-130:7. BWS has not produced any photographs or similar documentation of the condition of the Property prior to the Commencement Date." Docket Entry No. 30, pp. 11-12. Because BWS has acknowledged that the Lease period is the relevant period for all claims in this matter, that lack of knowledge or basis precludes BWS from establishing its claims for damages. BWS' lack of first-hand knowledge means it must rely on expert proof to establish damages to the Property, and yet its only disclosed expert has no experience with the Property prior to April 15, 2025. Without the benefit of photographs or other evidence from before the Commencement Date, and having not even reviewed testimony of witnesses that were present in the Property during the Lease period, Mr. Cornelison simply lacks any basis to offer reliable opinions as to the claimed damages.

Secondly, Airgas would point out that BWS has not even attempted to provide other evidence of the claimed damages to the Property outside of Mr. Cornelison's proposed testimony. If BWS could prove up its claimed repair damages by other evidence, the time to do was at this summary judgment stage. Airgas is not required to disprove BWS' claims, the burden of proof lies with BWS as the claimant to come forward with some admissible evidence to support those claims. *Celotex Corporation v. Catrett*, 477 U.S. 317 (1986). BWS has been afforded sufficient time for discovery under the Court's Scheduling Order, it has completed fact discovery and expert discovery, and yet it still has come forward with no evidence other than that of Mr. Cornelison's testimony. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989). This was the "put up or shut up" moment, and BWS has merely argued that it could "put up" some evidence, but has

not done so at summary judgment.[1] *Id.*; *see also Whitney v. The City of Milan*, 720 F. Supp. 958, 961 (W.D. Tenn. 2010).

## CONCLUSION

When it filed this lawsuit before sending Airgas documentation of payment of property taxes, BWS essentially "jumped the gun" and asserted a claim that could not be brought under the Lease. BWS' claim for unpaid property taxes and any late fees associated with that claim should be dismissed.

BWS made the curious decision to identify only an expert on pricing, and did not disclose any expert on causation or liability. In its Response to Airgas' Motion for Summary Judgment, it reaffirmed that Mr. Cornelison cannot testify as to causation, while also confirming that the one-year Lease period beginning on the Commencement Date is the relevant period for BWS claims against Airgas. After all discovery, BWS has not established how the condition of the Property at the time of surrender differed from the condition of the Property on the Commencement Date. The only established damages during the Lease period are those previously acknowledged by Airgas, involving drywall damaged during the removal of built-in desks and shelves. Accordingly, BWS' claims for damages to the property beyond those conceded and acknowledged by Airgas in this litigation should be dismissed.

---

[1] BWS did submit the Affidavit of Jennifer Nevans to support its arguments against dismissal of the claims for property taxes, Docket Entry No. 37-1, but that Affidavit did not address the condition of the Property or purportedly needed repairs to the Property. *Id*.

Respectfully submitted,

LEWIS THOMASON, P.C.

By: /s/ *Peter C. Robison*
Mary Beth White, BPR #24462
Peter C. Robison, BPR #27498
424 Church Street, Suite 2500
P.O. Box 198615
Nashville, TN 37219
(615) 259-1366
mbwhite@lewisthomason.com
probison@lewisthomason.com

*Attorneys for Defendant Airgas USA, LLC*

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing DEFENDANT AIRGAS USA, LLC'S REPLY TO BWS' RESPONSE TO THE MOTION FOR PARTIAL SUMMARY JUDGMENT has been served on the following counsel of record via email and through the Court's electronic filing system:

Lynzi J. Archibald, Esq.
Jessica M. Wolinsky, Esq.
Miller & Martin PLLC
832 Georgia Avenue, Suite 1200
Chattanooga, TN 37402
lynzi.archibald@millermartin.com
jessica.wolinsky@millermartin.com

This the 19th day of August, 2025.

/s/ *Peter C. Robison*
Peter C. Robison